IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROCK AYERS | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | 3:CV-07-1780 |
| | : | (JUDGE VANASKIE) |
| OSRAM SYLVANIA, INC. | : | |
|     Defendant | : | |

MEMORANDUM

Plaintiff, Brock Ayers, brought this action against Defendant, Osram Sylvania, Inc., asserting two claims under Pennsylvania law arising out of his employment termination. Currently before this Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. Entry 17.) For the reasons that follow, the Motion to Dismiss will be granted, but Plaintiff will be given leave to file a second amended complaint.

I.    BACKGROUND

Plaintiff Brock Ayers ("Ayers") was an employee of Defendant Osram Sylvania, Inc. (Dkt. Entry 14, ¶ 3.) On January 12, 2006, while on leave from work, Ayers sustained a recurrence of a chronic back problem. (Id., ¶ 16.) Ayers was scheduled to work on Monday, January 16, 2006; however, on Sunday, January 15, 2006, Ayers contacted his supervisor, David Park, to inform him he would not be in work on Monday due to his back injury. (Id., ¶ 17.) Ayers was told to report to the plant on Monday to file the necessary medical paperwork regarding the disability. (Id., ¶ 18.)

On Monday, Ayers' wife picked up the paperwork and, the following day, returned the completed documents to Defendant's Medical Department.  (Id., ¶ 19 - ¶ 20.)  After the injury, Ayers was unable to work and received short-term disability benefits from Defendant. (Id., ¶ 4.)

Ayers was required to submit to Defendant's Medical Department an employer-supplied medical form from his physician on the 17th of each month, attesting to Ayers' inability to return to work.  On February 17, 2006, and March 17, 2006, Ayers met with his treating physician, Dr. Sweet. (Id., ¶ 21.)  After each appointment, Dr. Sweet filled out an employer-supplied medical form, which was thereafter submitted to Defendant's Medical Department.  (Id.)  Each of these forms indicated that Ayers was unable to return to work. (Id., ¶ 26, ¶ 30, Exhibit "A".)

It was Defendant's practice to include employees who were unable to work, such as Ayers, on the work schedule, to begin work on or about the day each month when a treating physician would be completing the employer supplied medical form.  (Id., ¶ 22.)  Ayers, aware of this practice, knew he would be included on the work schedule for April 16, 2006. Accordingly, he called the Medical Department on April 14, 2006.  (Id., ¶ 23.)  During the call, Ayers informed the Medical Department of his 10:00 a.m. medical appointment on April 17, 2006, and informed the Department that he would be unable to make his 11:40 p.m. shift on April 16, 2006. (Id.)

Defendant attended his April 17 appointment and was not medically cleared to return to work. (Id., ¶ 27.) At 7:00 a.m. on April 20, 2006, Ayers' wife delivered the completed April 17, 2006, employer-supplied medical form to Defendant's Medical Department. (Id., ¶ 32.) Pursuant to Defendant's policy, "an employee who is absent for three consecutive scheduled work days without calling departmental supervision or the medical department to advise them [of] the reason for the absence, will be considered to have resigned." ("Three Day Rule") (Dkt. Entry 14, ¶ 6.) Defendant terminated Ayers on April 20, 2006, alleging violation of the Three Day Rule. (Id., ¶ 3.) Ayers asserts that Defendant incorrectly determined that he violated the Three Day Rule. (Id., ¶ 7 - ¶ 8.)

Ayers filed a complaint in the Court of Common Pleas of Bradford County, Pennsylvania, and Defendant removed the case pursuant to 28 U.S.C. § 1446(a) on the basis of diversity of citizenship jurisdiction. (Dkt. Entry 1.) Defendant filed a Motion to Dismiss the Complaint on October 5, 2007. (Dkt. Entry 4.) On November 28, 2007, this Court ordered Ayers to file an Amended Complaint. (Dkt. Entry 12.) An Amended Complaint was filed on December 17, 2007, (Dkt. Entry 14), and on January 16, 2008, Defendant filed a Motion to Dismiss. (Dkt. Entry 17.)

The Amended Complaint sets forth two causes of action: wrongful discharge and "punitive damages" under Pennsylvania common law. Ayers alleges that he was "wrongfully terminated because he exercised his right to receive short-term disability

3

benefits," and that "Defendant's conduct was retaliatory and self-serving and violates a clearly defined public policy."[1] (Dkt. Entry 14, ¶ 10.) Ayers also alleges that Defendant's actions violated its own policy, and that no reason, other than retaliation for the exercise of his short-term disability benefit rights, justifies his discharge. (Id., ¶ 11 - ¶ 13.)

II. DISCUSSION

A. Standard of Review

The court's task on a Rule 12(b)(6) motion to dismiss for failure to state a claim is to "determine whether, under any reasonable reading of the pleadings, the plaintiffs may be entitled to relief." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In doing so, all factual allegations and all reasonable inferences drawn therefrom are assumed to be true. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). "The complaint will be deemed to have alleged sufficient facts if it adequately puts the defendants on notice of the essential elements of the cause of action." Id.

The court, however, need not accept as true a complaint's "bald assertions" or "legal conclusions." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. United States v. Marisol, Inc.,

---

[1] The Amended Complaint fails to specify which, if any, statutes or policies of the Commonwealth Defendant violated.

725 F. Supp. 833, 836 (M.D. Pa. 1989).  The Supreme Court recently abrogated its longstanding decision in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), which had held that a complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The Court retired this "no set of facts" language in favor of a new standard: a plaintiff's obligation to state a claim for relief under Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  As a result of Twombly, plaintiffs must now nudge their claims "across the line from conceivable to plausible."  Id.  To state a claim consistent with the language of Fed. R. Civ. P. 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint must contain factual allegations sufficient enough "to raise a right to relief above a speculative level."  Id.

   B. Wrongful Discharge

Count one of the Amended Complaint alleges wrongful discharge under Pennsylvania common law.  Ayers bases this claim on the allegation that he was discharged in violation of public policy because he "exercised his right to receive short-term disability benefits," (Dkt. Entry 14, ¶ 10), and because Defendant violated its own internal policy.  (Id., ¶ 11.)

   "Pennsylvania law presumes that an employee serves at the pleasure of an

5

employer and the relationship may be terminated by either party and at any time absent a specific term or duration." Rogers v. Int'l Bus. Machs. Corp., 500 F. Supp. 867, 868 (W.D. Pa. 1980) (citing Cummings v. Kelling Nut Co., 84 A.2d 323, 325 (Pa. 1951)).  Pennsylvania law prescribes that at-will employment may be terminated for any reason, or no reason, provided that the termination is not contrary to public policy.  Kelly v. Ret. Pension Plan for Certain Home Office, 73 Fed. App'x. 543, 544 (3d Cir. 2003) (citing Clark v. Modern Group Ltd., 9 F.3d 321, 327-28 (3d Cir. 1993));  see Shick v. Shirey, 716 A.2d 1231 (Pa. 1998); Lekich v. Int'l Bus. Machs. Corp., 469 F. Supp. 485, 488 (E.D. Pa. 1979) ("A discharge may be for good reason or for no reason, but not for an illegitimate reason.").  "A discharged employee may have a cause of action against his employer when the employer exercises his otherwise absolute right to terminate the employment relationship in a manner which contravenes or undermines an important public policy." Molush v. Orkin Exterminating Co., Inc., 547 F. Supp. 54, 56 (E.D. Pa. 1982).  The public policy exception to at-will employment will be used in only the "'most limited of circumstances, where discharges of at-will employees would threaten the clear mandates of public policy.'" Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. Ct. 1996) (quoting Krajsa v. Keypunch, Inc., 622 A.2d 355, 358 (1993)); see Rogers, 500 F. Supp. at 869 (W.D. Pa. 1980) (limiting employer's power to terminate if related to a violation of a clear mandate of public policy). For a plaintiff's claim to fall under the public policy exception, "the employee must point to a

6

clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." Hunger, 670 A.2d at 175 (citing Jacques v. AKZO Int'l Salt, Inc., 619 A.2d 748 (Pa. Super. Ct. 1993)). The simple articulation of the policy, however, is not enough; the statute, constitution or judicial decision "must be applicable directly to the employee and the employee's actions." Id.

"[T]he Pennsylvania Supreme Court has held that in order for the public policy exception to apply, the alleged violation of public policy must be of Pennsylvania public policy, not solely an alleged violation of federal law." Kelly, 73 Fed. App'x at 545 (citing McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283 (Pa. 2000)). The clarity of the public policy is essential to the determination of whether the exception is to be applied. "'[P]ublic policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest.'" McLaughlin, 750 A.2d at 288 (citing Shick, 716 A.2d at 1237).

Public policy exceptions have been recognized in only extremely limited circumstances.[2] "An essential element in permitting a cause of action for wrongful

---

[2] A public policy exception is found in limited categories, including, when an employee is fired for performing a function that he or she is required to perform by law, e.g., Field v. Philadelphia Elec. Co., 565 A.2d 1170 (Pa. Super. Ct. 1989) (employee fired for reporting a nuclear safety violation); Reuther v. Fowler & Williams, Inc., 386 A.2d 119 (Pa. Super. Ct. 1978) (employer fired employee for serving on a jury), and when the discharge itself is criminal. Perks v. Firestone Tire & Rubber Co., 611 F.2d 1363 (3d. Cir. 1979) (refusal to submit to polygraph examination); Polsky v. Radio Shack, 666 F.2d 824 (3d Cir.

discharge is a finding of a violation of a clearly defined mandate of public policy which 'strikes at the heart of a citizen's social right, duties and responsibilities.'" Yetter v. Ward Trucking Corp., 585 A.2d 1022, 1026 (Pa. Super. Ct. 1991) (citing Hineline v. Stroudsburg Elec. Supply Co., Inc., 559 A.2d 566 (Pa. Super. Ct. 1989)); see Burkholder v. Hutchinson, 589 A.2d 721, 724 (Pa. Super. Ct. 1991).

Ayers concedes that he is an at-will employee. He asserts, however, that the public policy exception applies to his situation. Ayers argues that a plethora of statutes support the claim that Pennsylvania has a strong governmental interest in private employer-provided disability benefits. The legislative, administrative, and judicial citations referred to do not, however, support the assertion that the Commonwealth has a substantial interest in the regulation of private employer-provided disability benefits.[3]

---

1981) (results of a polygraph examination required as a condition of continued employment).

[3] In support of the assertion that the Commonwealth has a substantial interest in the regulation of private employee provided disability benefits, Plaintiff cites the following statutory provisions: 1 Pa. Cons. Stat. Ann. § 2301(c); 23 Pa. Cons. Stat. Ann. § 3501; 43 Pa. Stat. 804; 72 Pa. Stat. § 7301(d); 40 Pa. Stat. § 1; 40 Pa. Stat. § 4103; and 20 Pa. Cons. Stat. Ann. § 8701. Subsection (c) of 1 Pa. Cons. Stat. Ann. § 2301, entitled Equality of Rights Based on Sex, states that when an employment benefit authorized by statute is paid, "any designation of beneficiary which is restricted to a single sex shall be deemed a reference to both sexes." This statute does not apply in this situation, since private employer-provided short-term disability benefits are not a benefit authorized by statute. Chapter 35 of Title 23 involves Domestic Relations, and more specifically, property rights at the time of divorce. See 23 Pa. Cons. Stat. Ann. § 3501. The Rate and Amount of Compensation section of the unemployment compensation schedule, 43 Pa. Stat. § 804, does not apply in this situation. The other statutes cited also fail to provide protection for

Plaintiff places particular emphasis on 31 Pa.Code § 89.98, entitled Major Medical. This regulation provides that in the event of employment termination, insurance benefits should be extended during total disability for at least twelve months subsequent to the termination of employment.  31 Pa.Code § 89.98.  No violation of this statute was alleged in the Amended Complaint, nor were any allegations made regarding insurance.

Ayers cites two cases that he claims compel recognition of a wrongful discharge cause of action under Pennsylvania law: Ciliberti v. Ciliberti, 542 A.2d 580 (Pa. Super. Ct. 1988), which determined when disability benefits are marital property, and York Cable Television, Inc. v. Unemployment Comp. Bd. of Review, 654 A.2d 270 (Pa. Commw. Ct. 1995), which determined that plaintiff was entitled to unemployment compensation while simultaneously receiving employer-provided temporary disability benefits.  Although these cases may mention disability benefits, they do not support a strong public policy in favor of protecting private employer-provided disability benefits.

Furthermore, it appears that the Pennsylvania courts have rejected a wrongful discharge claim premised upon an intent to prevent collection of employer-provided short-term disability benefits. See Ulmer v. Garnon Truck Equip. Inc., 41 Pa. D. & C.3d 455, 459 (Erie County 1986).  Ulmer referenced the trial court ruling Sherred v. Lord Corp., which

---

disability benefits.  20 Pa.Cons. Stat. Ann. § 8701 involves the terms of existing trusts, while 40 P.S. § 1 and 40 P.S. § 4103 involve the establishment of an insurance department and the Interstate Insurance Product Regulation Compact.

involved an allegation that the employee was terminated so that the employer would not have to pay disability benefits. Id. That court found that "no public policy was at issue . . . ." Id. The Sherred decision was affirmed, without an opinion, by the Pennsylvania Superior Court. Sherred v. Lord Corp., 509 A.2d 1325 (Pa. Super. 1986).

Ayers has not cited any statute or legal precedent to support the conclusion that termination based on exercise of the right to receive employer-provided short-term disability benefits is protected by the public policy exception to the employment at-will doctrine. See McLaughlin, 750 A.2d at 288. Additionally, this Court can find no statutory or case law that articulates this public policy, or which applies directly to Ayers. See Hunger, 670 A.2d at 175.

It is not surprising that Pennsylvania law appears to be silent on the availability of a wrongful discharge claim premised upon an allegation that the plaintiff was terminated to preclude recovery of employer-provided short-term disability benefits for a non-work related injury. Employer-provided disability benefit plans generally fall within the ambit of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., which explicitly covers an "employee welfare benefit plan" that provides benefits "in the event of . . . disability." 29 U.S.C. § 1002(1). Section 510 of ERISA makes it "unlawful for any person to discharge . . . [an employee] . . . for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under [an employee welfare benefit plan]."

29 U.S.C. § 1140.  Thus, "[a] claim of discharge based on a 'benefits-defeating' motive comes under Section 510 of ERISA."  Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 677 (3d Cir. 2000).  This anti-retaliation provision is enforceable through a civil action authorized by § 502(a) of ERISA, 29 U.S.C. § 1132(a).  As a consequence of the sweeping preemption provision of § 514(a) of ERISA, 29 U.S.C. § 1144(a),[4] state law wrongful discharge claims based upon an allegation of an intent to preclude receipt of ERISA-covered benefits are precluded.  See, e.g., Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 145 (1990); Wood, 207 F.3d at 678-79; Lewis v Holcim, Inc., No. Civ. A. 5:05-928, 2006 WL 490114, at * 3-4 (D.S.C. Feb. 28, 2006).

      Thus, if the short-term disability benefits plan under which Ayers was receiving payments when he was discharged is covered by ERISA, there could be no Pennsylvania common law wrongful discharge claim based upon the contention that the termination was intended to defeat Ayers' right to such benefits.  Such a claim "clearly falls within the scope of . . . ERISA . . . since it is an action for retaliatory discharge similar to a § 510 ERISA claim . . . ."  Lewis, 2006 WL 490114, at * 3.

      Ayers' Amended complaint does not assert an ERISA claim.  It is unclear whether Ayers deliberately elected not to proceed under ERISA.  Nor is it clear that Defendant's

---

[4] In pertinent part, § 514(a) states that ERISA's provisions "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan."

short-term disability plan is covered by ERISA.  What is evident is that no Pennsylvania common law claim of wrongful discharge can be maintained here.[5]

Ayers also asserts that his termination violated Defendant's internal company policies.  A breach of a corporate policy, however, "is not so significant as to be recognized as an exception to the common law doctrine of at-will employment."  Moran v. Ladbroke Racing Mgmt-Pa. Inc., 16 Pa. D. & C.4th 380, 384 (Westmoreland County 1992).  Since Plaintiff has conceded that he is an employee at will, Defendant's alleged breach of corporate policy is not significant enough to create an exception to the at-will employment doctrine.  See id.

    C. Punitive Damages

Count two of Plaintiff's Amended Complaint, entitled "Punitive Damages," asserts that the "conduct of Defendant . . . was outrageous, intentional, malicious, willful and in blatant disregard for the rights of Plaintiff."  (Dkt. Entry 14, ¶ 44.)  As a result of that conduct, Plaintiff alleges entitlement to punitive damages.  (Id. ¶ 45.)

Our Court of Appeals has held that "a federal court's award of punitive damages for wrongful discharge does not constitute an unwarranted extension of state law."  Woodson v.

---

[5] Plaintiff will be given leave to file an amended complaint to assert an ERISA § 510 claim if he wants to seek relief under this federal law.  In granting leave to amend, this Court intimates no opinion as to whether Defendant's short-term disability plan is covered by ERISA or as to the merits of any ERISA § 510 claim.

AMF Leisureland Ctrs., Inc., 842 F.2d 699, 703 (1988).  However, "[a] request for punitive damages does not constitute a cause of action in an of itself.  Rather, a request for punitive damages is merely incidental to a cause of action."  Nix v. Temple Univ. of the Commonwealth Sys. of Higher Educ., 596 A.2d 1132, 1138 (Pa. Super. Ct. 1991) (citing Feingold v. SEPTA, 517 A.2d 1270 (Pa. 1986)).

Since Plaintiff's wrongful discharge claim has been dismissed, there is no viable underlying cause of action.  "If no cause of action exists, then no independent action exists for a claim of punitive damage, since punitive damages is [sic] only an element of damages." Reading Radio, Inc. v. Fink, 833 A.2d 199, 214 (Pa. Sup. Ct. 2003).[6]  Thus, Defendant's Motion to Dismiss count two of Plaintiff's Amended Complaint will be granted.

III.    CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss will be granted.  An appropriate Order follows.

s/ Thomas I. Vanaskie  
Thomas I. Vanaskie  
United States District Judge

---

[6] It should be noted that punitive damages and emotional distress damages may not be available in an action based upon § 510 of ERISA.  See Zimmerman v. Sloss Equip. Inc., 72 F.3d 822, 827-29 (10th Cir. 1995); Vargas v. Child Dev. Council of Franklin County, Inc., 269 F. Supp. 2d 954, 957 (S.D. Ohio 2003).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BROCK AYERS                                  :
             Plaintiff                 :
                                             :
  v.                                         :          3:CV-07-1780
                                             :          (JUDGE VANASKIE)
OSAM SYLVANIA, INC.                          :
             Defendant                 :

ORDER

     NOW, THIS 24th DAY OF SEPTEMBER, 2008, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

     1. Defendant's Motion to Dismiss (Dkt. Entry 17) is GRANTED.

     2. Within twenty (20) days of the date of this Order, Ayers may file a second amended complaint.

     3. Failure to file a second amended complaint will result in the dismissal of this action.

                                         s/ Thomas I. Vanaskie
                                         Thomas I. Vanaskie
                                         United States District Judge