IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BROCK AYERS, :
      Plaintiff :
  vs. : CIVIL ACTION NO. 3: CV-07-1780
      : (JUDGE VANASKIE)
OSRAM SYLVANIA, INC., and :
UNUMPROVIDENT :
      Defendant :

## MEMORANDUM

Plaintiff Brock Ayers brought this action against Defendants Osram Sylvania, Inc. and UnumProvident, asserting an interference/retaliation claim under Section 510 of the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140. (Dkt. Entry 23, ¶ 10.)[1] Presently before the Court are Plaintiff's Motion to File a Third Amended Complaint (Dkt. Entry 36), and Defendant Osram Sylvania, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint. (Dkt. Entry 30.) For the reasons that follow, both motions will be denied.

I.    BACKGROUND

Plaintiff Brock Ayers ("Ayers") was an employee of Defendant Osram Sylvania, Inc. ("Osram")(Dkt. Entry 23, ¶ 4.) On January 12, 2006, Ayers sustained a reoccurrence of a

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

chronic back problem while on leave from work. (Id. ¶ 16.) Ayers was scheduled to work on Monday, January 16, 2006. Accordingly, Ayers contacted his supervisor, David Park, to inform him he would not be at work on Monday due to his back injury. (Id. ¶ 17.) Mr. Park told Ayers to report to the plant on Monday to file the necessary medical paperwork regarding his disability. (Id. ¶ 18.) On Monday, Ayers' wife picked up the paperwork and returned the completed documents to Osram's Medical Department the following day. (Id., ¶¶ 19 - 20.)

Around this time, Ayers began receiving short-term disability benefits pursuant to Osram's Short-Term Disability Plan, which provides employees income during a non-work related disabling illness or injury. ("Orientation Handbook-Focus on Benefits," Dkt. Entry 9-5, at 50.)[2] The Disability Plan provides employees coverage equal to 65 percent of their base pay, up to a maximum of $435.00 per week. An employee is entitled to short-term disability benefits for twenty-six (26) weeks, provided the employee remains disabled during that time. (Id.)

Ayers remained unable to work after his back injury and continued to receive short-

---

[2] Both Ayers' Second Amended Complaint and proposed Third Amended Complaint fail to specify at what point Ayers began receiving short-term disability benefits from Osram. It is reasonable to infer, however, that Ayers received disability benefits around January 15, 2006, when he began his leave of absence. (Dkt. Entry 36, ¶ 32; see also Dkt. Entry 39, at 4.) Moreover, Ayers does not specify when he stopped receiving short-term disability benefits.

term disability benefits from Osram.  During this time, Osram required Ayers to attend a monthly re-evaluation with his treating physician, Dr. Sweet, and to submit a medical form to its Medical Department on the 17th of each month.  (Dkt. Entry 23, ¶ 21.)  Around this time each month, Osram placed Ayers on its work schedule until its medical department received Ayers' completed medical form.  (Id., ¶ 22.)

Ayers met with Dr. Sweet on February 17, 2006, and March 17, 2006.  (Dkt. Entry 14-2.)  Dr. Sweet attested to Ayers' inability to return to work on each occasion, and Ayers returned the completed paperwork to Osram's Medical Department.  (Id.; Dkt. Entry 23, ¶ 25.)   During the month of April, Osram scheduled Ayers for work at 11:40 p.m. on April 16, 2006, according to its usual practice.  (Id. ¶ 23.)  Aware of this, Ayers informed Osram's medical department on April 14, 2006, that he had an appointment with Dr. Sweet at 10:00 a.m. on April 17, 2006, for a re-evaluation and would not be able to work as scheduled.  (Id., ¶¶ 23 - 24.)  Dr. Sweet did not clear Ayers for work, and Ayers' wife returned the completed medical form to Osram's medical department at 7:00 a.m. on April 20, 2006.  (Id. ¶ 25.)

It is Osram's policy that "an employee who is absent for three consecutive scheduled work days without calling departmental supervision or the medical department to advise them [of] the reason for the absence, will be considered to have resigned."  (Id. ¶ 7.)  Osram terminated Ayers' employment on April 20, 2006, asserting that Ayers violated this

policy.  (Id. ¶ 4.)  Ayers claims that Osram incorrectly determined that he violated this policy.  (Id. ¶¶ 7- 8.)

II.     Procedural History

Ayers filed a complaint in the Court of Common Pleas of Bradford County, Pennsylvania, and Osram removed the case pursuant to 28 U.S.C. § 1446(a) on the basis of diversity of citizenship jurisdiction.  (Dkt. Entry 1.)  Osram filed a Motion to Dismiss the Complaint on October 5, 2007.  (Dkt. Entry 4.)  On November 28, 2007, this Court ordered Ayers to file an Amended Complaint.  (Dkt. Entry 12.)  An Amended Complaint was filed on December 17, 2007 (Dkt. Entry 14), and on January 16, 2008, Defendant filed a Second Motion to Dismiss.  (Dkt. Entry 17.)

Ayers' Amended Complaint set forth two causes of action under Pennsylvania common law: (1) wrongful discharge; and (2) punitive damages.  (Dkt. Entry 14.)  This Court granted Defendant's Motion to Dismiss, noting that the sweeping preemption provision of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), precluded Ayers' state law wrongful discharge claims, and that a claim for punitive damages does not present a viable underlying cause of action.  (Dkt. Entry 22, at 12-13.)  This Court granted Ayers the opportunity to file a second amended complaint to assert an ERISA cause of action under Section  510 of ERISA, 29 U.S.C. § 1140.  (Id., at 14.)

Ayers filed a Second Amended Complaint on October 14, 2008.  (Dkt. Entry 23.)  In

his Second Amended Complaint, Ayers adds UnumProvident, "the administrator and insurer of the benefits in question," as a second defendant. (Id. ¶ 12.) Ayers states that his employer-provided short-term disability benefits are covered under 29 U.S.C. § 1002(1), claiming Defendants' conduct interferes with his rights and violates 29 U.S.C. § 1140 and 29 U.S.C. § 1132(a). (Id. ¶¶ 11-12.) Ayers seeks the following form of relief: "an order requiring Defendants to pay all Short Term Disability Benefits due to Plaintiff under the Plan as a result of his disability from May 8, 2006 to the present and continuing, plus attorney's fees and costs under ERISA and such other relief as . . . just and proper." (Id. at 5.)

Osram filed a Motion to Dismiss Plaintiff's Second Amended Complaint on December 3, 2008 (Dkt. Entry 30), claiming that Ayers fails to state a claim upon which relief can be granted because: (1) Ayers requested relief that is unavailable under Section 510 of ERISA, 29 U.S.C. § 1140 (Dkt. Entry 31, at 7); and (2) Ayers has not exhausted his administrative remedies in order to receive relief under Section 502 (a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B). (Id. at 10-11.) This Court granted Ayers' motion for an extension of time to file a response to Osram's Motion to Dismiss Plaintiff's Second Amended Complaint until January 30, 2009. (Dkt. Entry 35.) On January 29, 2009, Ayers filed a Motion for Leave to File a Third Amended Complaint. (Dkt. Entry 36.) Significantly, Ayers failed to file a brief in opposition to the motion to dismiss the Second Amended Complaint.

Ayers' proposed Third Amended Complaint states that Osram, rather than UnumProvident, is in fact the administrator of the short-term disability plan. (Dkt. Entry 36-2, ¶¶ 11-12.) Ayers clarifies that he is "entitled to appropriate equitable relief under 29 U.S.C. § 1132(a)(3)," requesting "[j]udgment against Defendants in the form of an order directing reinstatement of Plaintiff's eligibility for benefits under the plan." (Id. ¶ 37.) Osram filed an Opposition to Plaintiff's Motion to File a Third Amended Complaint on February 13, 2009, arguing Ayers' motion should be dismissed because the proposed amendments are "futile." (Dkt. Entry 39.) Osram claims Ayers can no longer be reinstated to its Short-Term Disability Plan because his twenty-six weeks of eligibility have expired, leaving him instead with a request for benefits he contends he has lost. Osram argues that Ayers' request for relief in the form of lost disability benefit payments is foreclosed by Ayers' failure to exhaust plan remedies.

III.   DISCUSSION

   A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. In order to state a claim for relief, Federal Rule of Civil Procedure 8 (a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

6

Ashcroft v. Iqbal, ---- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint that shows that the pleader is entitled to relief — or put another way, facially plausible — will survive a Rule 12(b)(6) motion.  See Fed.R.Civ.P. 8(a)(2).  "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  In contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal citations omitted).

The United States Supreme Court in Twombly enunciated a two-pronged approach. Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 555-56).  First, a court considering a motion to dismiss identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  That is, the court must ascertain whether the factual allegations nudge the "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

7

B. Plaintiff's Response to Defendant's Motion to Dismiss

Rather than filing a brief in opposition to Osram's Motion to Dismiss as required by Middle District of Pennsylvania Local Rule 7.6, Ayers filed a Motion for Leave to File a Third Amended Complaint on January 29, 2009.[3] Ayers did not file a brief in support of his motion as required by Middle District of Pennsylvania Local Rule 7.5. (Dkt. Entry 36.) Middle District of Pennsylvania Local Rule 7.5, in pertinent part, states:

> Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file a brief in support of the motion. . . . . Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn.

M.D. of Pa. LR 7.5.

The Third Circuit affords district courts deference in enforcing its local rules. In Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991), the Third Circuit stated that "[t]here may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, <u>particularly if the party is represented by an attorney</u> and in that situation the rule may be appropriately invoked." (emphasis added). Moreover,

---

[3] Because Ayers did not file a responsive brief to Osram's Motion to Dismiss, he has violated Local Rule 7.6, which states that "[a]ny party opposing any motion shall file a responsive brief . . . within fifteen (15) days after service of the movant's brief . . . Any respondent who fails to comply with this rule will be deemed not to oppose such motion." M.D. Pa. LR 7.6. Despite this violation, this Court will proceed with a merits analysis of Osram's Motion to Dismiss.

in Salkeld v. Tennis, 248 F. App'x 341, 343 (3d Cir. 2007), the Third Circuit affirmed this Court's decision to treat a motion for a temporary restraining order as withdrawn due to the plaintiff's failure to comply with Local Rule 7.5.[4] Accordingly, Ayers' motion for leave to amend his complaint will be deemed withdrawn.

C. Motion to Dismiss Plaintiff's Second Amended Complaint

Ayers' Second Amended Complaint states that Osram's conduct violates Section 510 of ERISA, 29 U.S.C. § 1140 (Dkt. Entry 23, ¶ 10), asserting that he was unlawfully discharged for exercising "his right to receive short-term disability benefits." (Id. ¶ 11.) Section 510 of ERISA makes it "unlawful for any person to discharge . . . [an employee] . . . for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under [an employee welfare benefit program]." 29 U.S.C. § 1140. Thus, "[a] claim of discharge based on a 'benefits-defeating' motive comes under Section 510 of ERISA." Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 677 (3d Cir. 2000).

This anti-retaliation provision is enforceable through a civil action authorized by

---

[4] See also Bergdoll v. City of York, Civ. A. No. 1:08cv1879, 2009 WL 1351015, at *2 (M.D. Pa. May 12, 2009) (plaintiff's motion to amend/correct complaint was withdrawn and denied without prejudice for failure to comply with Local Rule 7.5); Lyons v. Beard, Civ. No. 3:CV-07-444, 2008 WL 408399, at *1, n.1 (M.D. Pa. Feb. 12, 2008) ("Because Plaintiff failed to file a brief in support of his motion for a temporary restraining order, the motion will be deemed withdrawn"); Pabaon Osvaldo v. U.S.P. Lewisburg Warden, Civ. No. 3:CV-05-155, 2006 WL 485574, at *2, n.4 (M.D. Pa. Feb. 28, 2006) ("This motion [to compel discovery] will be deemed withdrawn pursuant to M.D. Pa. Local Rule 7.5 due to Plaintiff's failure to file a supporting brief.").

Section 502(a) of ERISA, 29 U.S.C. § 1132(a). As a participant of an employee welfare plan, Ayers can seek relief under either 502(a)(1)(B) or Section 502(a)(3) of ERISA. The former section permits a participant "to recover benefits due to him under the terms of his plan . . . [or] to enforce his rights under the terms of the plan," while the latter section permits a participant "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Ayers does not state under which provision of Section 502(a) he is seeking relief in his Second Amended Complaint. In Ayers' prayer for relief, he requests "an order requiring Defendants to pay all short term disability benefits due to Plaintiff under the Plan as a result of his disability from May 8, 2006 to the present and continuing, plus attorney's fees and costs under ERISA." (Dkt. Entry 23, at 5.) It thus appears that he is claiming as his measure of damages for the alleged violation of ERISA Section 510 the short term disability benefits he lost with the termination of his employment, relief that appears to be authorized by ERISA Section 502(a)(1)(B).

As a general rule, a plaintiff cannot seek relief under Section 502(a)(1)(B) for ERISA-covered benefits without first exhausting administrative remedies. Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984). Our Court of Appeals, however, has drawn a distinction "between claims to enforce the terms of a benefit plan

and claims to assert rights established by the ERISA statute." D'Amico v. CBS, 297 F.3d 287, 293 (3d Cir. 2002) (citing Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986)). In Zipf, our Court of Appeals held that a plaintiff seeking relief under § 510 of ERISA need not show exhaustion of administrative remedies as a prerequisite to maintaining the lawsuit. In finding that a § 510 interference/retaliation claim is not subject to an exhaustion requirement, Judge Stapleton in Zipf explained:

> First, we find no indication in the Act or its legislative history that Congress intended to condition a plaintiff's ability to redress a statutory violation in federal court upon the exhaustion of internal remedies. The provision relating to internal claims and appeals procedures, Section 503, refers only to procedures regarding claims for benefits. There is no suggestion that Congress meant for these internal remedial procedures to embrace Section 510 claims based on violations of ERISA's substantive guarantees.
>
> On the contrary, the legislative history suggests that the remedy for Section 510 discrimination was intended to be provided by the courts. 2 Legislative History of the Employee Retirement Income Security Act of 1974, 1641-42 (1976) (remarks of Sens. Hartke and Javits). Indeed, an amendment that would have created an administrative remedy for Section 510 claims, to be established by the Department of Labor, was defeated. See Id., at 1774-75, 1835-37.
>
> . . . .
>
> . . . . When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits. This ensures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and

creates a record of the plan's rationale for denial of the claim.

However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite. Unlike a claim for benefits brought pursuant to a benefits plan, a Section 510 claim asserts a statutory right which plan fiduciaries have no expertise in interpreting. Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent. Indeed, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions. Moreover, statutory interpretation is not only the obligation of the courts, it is a matter within their peculiar expertise.

799 F.2d at 891-93 (footnotes omitted) (citations omitted).

That the relief awarded may be lost benefits, as authorized by § 502(a)(1)(B), does not alter the result. Courts have declined to impose an exhaustion requirement where, as here, the plaintiff seeks recovery of benefits lost as a result of an alleged § 510 violation. See, e.g., Chaillard v. Brown & Root, Inc., 45 F.3d 947, 950 (5th Cir. 1995); Held v. Mfgs. Hanover Leasing, Corp., 912 F.2d 1197, 1204-05 (10th Cir. 1990); Falcone v. Teamsters Health & Welfare Fund, 489 F. Supp. 2d 490, 495-96 (E.D. Pa. 2007). Accordingly, Ayers' claim under § 502(a)(1)(B) for an alleged violation of § 510 of ERISA is not foreclosed by his failure to exhaust administrative remedies.

IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss will be denied, and Plaintiff's motion for leave to file a Third Amended Complaint will be denied. An appropriate Order

follows.

                                  <u>s/ Thomas I. Vanaskie</u>
                                  Thomas I. Vanaskie
                                  United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BROCK AYERS, :
       Plaintiff :
   vs. : CIVIL ACTION NO. 3: CV-07-1780
: (JUDGE VANASKIE)
OSRAM SYLVANIA, INC., and :
UNUMPROVIDENT :
       Defendant :

## ORDER

NOW, THIS 15th DAY OF SEPTEMBER, 2009, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. The Motion to File a Third Amended Complaint on behalf of Plaintiff Brock Ayers (Dkt. Entry 36) is DENIED.

2. The Motion to Dismiss Plaintiff's Second Amended Complaint filed on behalf of Defendant Osram Sylvania, Inc. (Dkt. Entry 27) is DENIED.

3. A telephonic scheduling conference will be held on Thursday, October 15, 2009, at 9:00 a.m. Plaintiff's counsel is responsible for placing the call to (570) 207-5720, and all parties should be ready to proceed before the undersigned is contacted.

                                      s/ Thomas I. Vanaskie
                                      Thomas I. Vanaskie
                                      United States District Judge